THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILLARD TAYLOR (Impleaded), Defendant-Appellant.

(No. 71-325; ▮▮▮▮▮▮▮)

Second District—December 1, 1972.

*Rehearing denied December 28, 1972.*

Ralph Ruebner, of Defender Project, of Elgin, (Kenneth L. Gillis, of counsel,) for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (James W. Jerz, of Model District State's Attorney's Office, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Defendant, aged 17, and one Thomas Ferguson, aged 18, were indicted on a charge of armed robbery of Vito Griseta, manager of a Ron Santo Pizzaria in Rockford. Defendant's motion to suppress oral statements allegedly made while in the custody of the police was denied. Defendant Taylor then moved for a substitution of judges. This motion was granted. His trial proceeded before a jury which, after deliberating informed the judge it could not reach a verdict, and was discharged.

A second jury trial resulted in a verdict of guilty and a sentence of three to ten years. Defendant appeals contending (1) that he was not proven guilty beyond a reasonable doubt; (2) the confession he made to two police officers was in violation of his constitutional rights; (3) that confession, and another which he made to his stepfather, should not have been admitted into evidence; (4) the court erred in denying a defense instruction on the credit to be given to police testimony; and (5) the sentence was excessive.

About 1:30 A.M. on June 21, 1970 preparations for closing up the restaurant were proceeding. Two waitresses were cleaning up the dining room. The manager was in the kitchen which was brightly lighted collecting money from delivery men, Berny Stenstrom and Ralph Fox. Also present in the kitchen was a cook, Russell Stephens. The cash register

could be reached from the kitchen through a window separating the two rooms. There was money on the table and the manager had money in his hand.

At that moment three men with guns entered the restaurant. Two unmasked men came into the kitchen and demanded the money from the manager, which he gave them. They also took money from the wallet of one of the delivery men. The third man, in the dining room, who had a nylon stocking over his face, forced one of the waitresses to hand him money from the cash register. After all the money was taken, totaling about $300, the robbers ran out. The robbery lasted about one minute.

At a line-up on July 20, 1970 the manager and Fox, one of the delivery men, identified the defendant and Ferguson as two of the men who robbed the restaurant. At a line-up on July 22 Stephens, the cook, identified the defendant Taylor as one of the robbers; likewise, at the trial the manager, the delivery men, and the cook positively identified defendant as one of the robbers.

Officers Francis and Ladwig, both testified that defendant and Ferguson made two confessions on June 21, 1970. They testified that on that day they took the defendant from his cell to a room on the second floor of the police station. Officer Francis read him his rights from the "rights card". Defendant said he understood his rights and would talk to them. After denying involvement in the robbery he asked where the police got their information and then said he would rather not talk anymore. He was returned to his cell. The officers then talked to Ferguson whom they also advised of his "rights". Ferguson said he wanted to talk to the defendant. The defendant was returned to the room, and they were left alone together for about five minutes. The officers returned and asked them if they wanted to talk, and defendant and Ferguson "mutually agreed" to tell the officers what happened. Ferguson was the "spokesman" for the two. The officers told them that "since this was a joint thing that anything either of them said, if they didn't agree, that they should interrupt * * *." Ferguson then told them that he, the defendant, and one William Triplett, and one Cary Eason, were the ones who held up the pizza parlor. Triplett supplied the guns, Ferguson and defendant entered through the rear door, and the other two through the front door. Defendant told the officers that none of the guns were loaded because they had no ammunition. They got about $240 in the robbery which they divided equally among the four after leaving the scene of the robbery in a car. Defendant told the officers that Triplett added up the money in his hat. They said they threw the weapons over the Fifteenth Street bridge in Rockford. After these statements they agreed to accompany the officers to the spot on the bridge where the guns were

thrown. Defendant said he threw his gun out, as they were crossing the bridge; he thought it was in the middle, but Ferguson thought it was further on. Divers searched for the weapons in the river but found none. When defendant, Ferguson, and the two officers returned to the police station, defendant's stepfather, Mr. Matlock, and his employer, Mr. Cable, asked to talk privately to the "boys". The officers told them they could. Before they talked privately, defendant told his stepfather that he had been involved in the armed robbery of the pizza parlor along with three others. While defendant and Ferguson had promised to give the officers a signed statement as to their part in the robbery, they never did so. (It may be noted at this point that although not disclosed to the jury, Ferguson later pleaded guilty to the armed robbery.)

Also testifying for the State were the manager of the restaurant, one of the delivery men, and the cook. All three were present when the robbery occurred, and related what took place at that time. They positively identified defendant as one of the robbers both at one or another of the two line-ups and in court.

The two waitresses were called as witnesses by the defense. They stated that they could not identify the defendant as one of the robbers. One Leon Cash testified for the defense that defendant had attended a party at the Cash home on the evening of June 20 and left there about 12:30 A.M. (June 21). Defendant's stepfather testified that he picked up the defendant at the party about 12:30 A.M., drove him home, and that defendant went upstairs to bed while the stepfather watched television. The stepfather and Mr. Cable both stated that defendant made no admission on July 21 concerning the robbery. The defendant testified that he was at the party and that he did not take part in the robbery although he knew Ferguson, Coy and Eason. He denied making any confession either to the officers or to his stepfather and denied pointing out where he threw his weapons.

■■ Defendant's argument that he was not proven guilty beyond a reasonable doubt boils down to the credibility to be attached to the testimony of various witnesses. There was some variance in the testimony of the State's witnesses as to the style and length of defendant's hair, as to his clothing, and the weapons used. On the other hand, defendant and two defense witnesses also differed in describing the length and style of his hair on that occasion, one said it was "shaved" and one said it was "cut low". However, the three State witnesses who were in the kitchen, which was brightly lighted, were only a short distance from the defendant and positively identified him as one of the robbers at the line-ups and in court. The rule in Illinois is that the testimony of even one witness, if positive and credible, is sufficient to convict even though it is

contradicted by the accused (*People v. Gray*, 33 Ill.2d 349, 356,), and precise accuracy in describing facial characteristics is unnecessary if an identification is positive. *People v. Miller*, 30 Ill.2d 110, 113; see also *People v. Nicholson*, 55 Ill.App.2d 361, 367.

■■ Obviously the jury in the case at bar did not believe defendant's alibi, that he was sleeping at the time the robbery occurred. Over the positive identification of the defendant by three witnesses the jury was not obliged to believe the alibi evidence. (*People v. Wright*, 126 Ill.App.2d 91, 97; *People v. Setzke*, 22 Ill.2d 582, 586.) It is not the function of this court to make a determination of the credibility to be attached to the testimony of various witnesses; that is the responsibility of the trier of fact whose findings will be reversed only when the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt. Examination of the evidence here discloses that it was sufficient to support a verdict of guilty.

■■ Defendant contends that his confession to the police officers was obtained in violation of his constitutional rights as enunciated in *Escobedo v. Illinois*, 378 U.S. 478, because the admissions were made by the defendant one day after his attorney told two other police officers not to speak to his client in his absence. Here the two police officers, Ladwig and Francis to whom the admissions were made, were unaware of the request of defendant's counsel. The defendant's decision to speak to the officers was not the result of coercion or interrogation, prolonged or persistent questioning, of psychological pressure. He was informed of his constitutional rights and understood them. His decision to speak to them and his implied waiver of the right to have counsel present were voluntarily made. (See *U.S. v. Moriarity* (7th Cir. 1967), 375 F.2d 901, 904.) An express waiver of the right to counsel under such circumstances is not necessary. (*People v. Brooks*, 51 Ill.2d 156, 164.) We refuse to extend the scope of *Miranda v. Arizona*, 384 U.S. 436, to the point where it would require the police, whenever a defendant attempts to volunteer information concerning an offense, to admonish him to refrain from speaking, as well as to repeat the so-called *Miranda* rights. We therefore hold that the confession to the two police officers did not violate defendant's constitutional rights and was properly admitted in evidence.

■■ Defendant further contends that his confession made to his stepfather in the presence of the two police officers should not have been admitted in evidence because the State did not give notice to the defense pursuant to court order of that confession. Defendant relies on Section 114—10(a) of the Criminal Code. (Ill. Rev. Stat. 1967, ch. 38, sec. 114—10(a).) That section refers to any "written confession made to any law enforcement officer," and in such case requires that a copy of

such confession be furnished and a list of witnesses; in the case of an oral confession "a list of the witnesses to its making shall be furnished". This section is applicable only to written or oral confessions made to a "law enforcement officer". The confession made to defendant's stepfather does not come within the scope of that section. (*People v. Thompson,* 3 Ill.App.3d 684.) In any case the only witnesses to the confession to the stepfather were officers Francis and Ladwig whose names appear on the list of witnesses furnished by the State. There was no error in receiving in evidence defendant's confession to his stepfather made in the presence of the two officers.

■■ We reject defendant's argument that the court erred in refusing defendant's instruction stating in part: "* * * that the testimony of a police officer is not entitled to any more credit or consideration than any other witness." Supreme Court Rule 451(a) (Ill. Rev. Stat. 1969, ch. 110A, sec. 451), requires the use of instructions from Illinois Pattern Jury Instructions in criminal cases. Instruction No. 3.19 of those instructions entitled "Weighing Police Testimony" states that the Committee "recommends that no instruction be given on this subject". The trial court properly refused to give such instruction in this case.

■■ Finally, defendant contends that his sentence was excessive and should be reduced. The power of the reviewing court to reduce sentences should be exercised with caution. The trial judge who imposed the sentence saw and heard the defendant and is obviously in a superior position to appraise him and evaluate the likelihood of his rehabilitation. The sentence imposed is within the limits prescribed by the legislature and is not in variance with the spirit of the law. (*People v. Taylor,* 33 Ill.2d 417, 424; *People v. Miller,* 33 Ill.2d 439, 444-445.) Despite defendant's youth and his lack of prior felony record, we believe that the facts and circumstances of this case justify the sentence imposed. Therefore it will not be reduced. The judgment of the trial court is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.