THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES COOK, Defendant-Appellant.

(No. 56169;

First District (3rd Division)—February 28, 1974.

Wendell P. Marbly, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants, James Cook and John Cook, were indicted for armed robbery. After a joint bench trial in the circuit court of Cook County defendants were found guilty as charged. James Cook was sentenced to 3 to 6 years in the penitentiary; John Cook was sentenced to 2 to 5 years. Both defendants have perfected appeals to this court. Because John Cook has died during the pendency of this appeal, his appeal has abated. (*O'Sullivan v. People*, 144 Ill. 604, 32 N.E. 192.) Therefore, on the instant record we are concerned only with the appeal of James Cook.

James Cook presents one issue for review. He contends that he was not proved guilty of the offense of armed robbery.

We affirm.

The armed robbery took place in the early morning hours of October 2, 1968, at the Cameo Lounge located at 3655 North Western Avenue in Chicago. At approximately 1:20 A.M. that morning two men entered the lounge. After ten minutes of sitting at the bar, drinking alcoholic beverages and talking to the bartender, they embarked on the robbery of the patrons and the premises. In addition to the defendants and the bartender, Victor Fiumetto, six people were present in the lounge; Mrs. Baker, Mrs. Courtney, Mr. Mayback, Mr. Finch, Mr. Bosshart and Mr. Meyer.

There is no dispute over the occurrence of the crime itself. Victor Fiumetto, the bartender, testified to the sequence of events. One of the men who had been sitting at the bar, identified as James Cook, went into the men's washroom. While he was serving a drink to one of the ladies, Mr. Fiumetto noticed that the other man, identified as John Cook, had gone to the door. John Cook turned around and with a gun in his hand he announced, "This is a stickup". Then Mr. Fiumetto saw James Cook coming out of the washroom.

John Cook jumped over the bar and backed Mr. Fiumetto towards the cash register. With James Cook holding the patrons at gun point, John Cook took $30-$35 from the cash register. John Cook then took the two ladies and Mr. Fiumetto into the women's washroom. In the mirror of the washroom Mr. Fiumetto observed John Cook searching the two ladies.

At some time during the search of the two women, James Cook placed the four men in the men's washroom. After the search of the women, John Cook took the two women and Mr. Fiumetto into the men's washroom where they joined the four men. Mr. Fiumetto was struck on the head as he entered the washroom. He observed blood on Mr. Bosshart's head.

Shortly thereafter, the defendants showed Mr. Fiumetto a cigar box containing money which they had found behind the bar. They both pointed guns at Mr. Fiumetto's head and stated, "Where is the rest of it?" Defendants made a further search of the tavern.

During the course of the armed robbery, Joseph DiVita entered the tavern, was robbed, and placed into the men's washroom with the other people. He was also hit on the head. While the victims were in the men's washroom, one defendant or the other would enter the washroom, threaten, and strike the male victims with a gun. The women were not injured.

The defendants told the victims not to leave the men's room. After hearing no noise for a while, the victims felt reasonably assured that the

robbers had left. They called the police. Officer Malecke of the Chicago Police Department was the first policeman to arrive at the scene. He talked to the victims and obtained a description of the armed robbers. Mr. Fiumetto pointed out to the evidence technician who arrived at the scene the items on the bar which the robbers might have touched. A beer glass with a latent fingerprint was recovered. The print obtained did not match those of either defendant or the bartender, Mr. Fiumetto.

Two days after the occurrence defendants were arrested at their home. Later that same day they participated in a lineup. Mr. Fiumetto, Mr. DiVita, and Mr. Meyer identified the defendants. Mr. Mayback identified one of the defendants.

Defendants did not testify at trial. An alibi was presented. Mrs. Lucille Cook, defendants' mother, testified that they were at home the night in question. Ray Cook, the defendants' brother, testified to the same effect.

■■ In the instant appeal defendant James Cook contends that he was not proven guilty beyond a reasonable doubt in spite of the positive identifications made by the victims of the armed robbery. We do not agree.

■■ The record shows that three witnesses, Mr. Fiumetto, Mr. DiVita, and Mr. Meyer, positively identified both defendants in court and were able to distinguish between them, although they were identical twins. A fourth witness, Mr. Mayback, identified only James Cook. A positive identification by one credible witness is sufficient to sustain a conviction. (*People v. Soldat*, 32 Ill.2d 478, 207 N.E.2d 449.) In the instant case four witnesses made positive identifications at trial. In addition, Fiumetto, DiVita, and Meyer identified both defendants at a lineup which was held 2 days after the robbery. Mayback identified only James Cook at the lineup.

The record shows that each identifying witness had ample opportunity to observe the defendants during the course of the crime. The lighting in the bar, although dim, was good. The lighting in the men's washroom was brighter. During the course of the robbery, which lasted about 40 minutes, the identifying witnesses had many opportunities to observe the defendants.

The description of the physical characteristics and dress of the defendants, which were given by the prosecution witnesses, were certain and reasonably detailed. However, James Cook points out inconsistencies in the testimony of these witnesses and argues that they necessitate reversal.

He first points out that none of the witnesses at trial described the defendants as having mustaches on the night in question. He argues that an examination of the photograph of the lineup, which was part of the

record, shows that defendants had mustaches 2 days after the robbery, and that this omission greatly weakens the identification testimony. An examination of the photograph of the lineup reveals that defendants did have mustaches but that they were not very prominent. Furthermore, Officer Malecke, who took a description of the offenders at the scene, testified that his report showed that one of the men was described as having a mustache.

Defendant next points to testimony concerning the defendants' hair styles on the night in question. The report of Officer Malecke stated that the two offenders had processed hair. The photograph of the lineup shows that the defendants did not at that time have what is commonly known as a "process". Lucille Oliver, a beautician, testified for the defense that if defendants had processed hair on the night in question, it would have taken at least a month to get the process out. Officer Malecke explained his use of the word "process" in the report. He stated that he concluded that the offenders had processed hair after listening to the victims' descriptions. At trial witnesses described one of the offender's hair as "slick", "black and shiny", "unruly", "laquered down and very straight", and "slicked down with a lot of grease". None of the prosecution's witnesses testified that he or she used the word "process" to describe the hair style. Officer Casey, of the Chicago Police Department, testified for the defense that on the morning of the arrest defendants' hair was substantially the same as it was at trial. He testified that they did not have processed hair.

Defendant further maintains that the failure of any of the victims to characterize defendants as identical twins casts doubt on their identifications. The record shows that although the defendants were identical twins, the witnesses were able to point out distinguishing characteristics. There was testimony that James Cook had a tooth missing in the front of his mouth. In addition, witnesses testified that on the night of the occurrence the hair of one defendant was "shinier" than the hair of the other. The manner in which the robbery was executed did not present the victims with many opportunities to view the defendants together. Nevertheless, both defendants were generally described as being the same age, height, weight and build. Differences in hair style and dress were noticed. As pictured in the lineup the defendants may have looked more like identical twins than they did on the night in question.

■■ Where there has been a positive identification, precise accuracy in describing facial characteristics is unnecessary. (*People v. Miller,* 30 Ill.2d 110, 195 N.E.2d 694.) In the instant case, where four positive identifications were made and the witnesses substantially corroborated each other, we consider the discrepancies in the testimony minor and

insufficient to raise a reasonable doubt as to defendant's guilt. (*People v. Williams*, 28 Ill.2d 53, 190 N.E.2d 796.) Over the positive identifications of four witnesses, the court, as trier of fact, was not obliged to believe the alibi evidence presented by defendant's relatives and obviously did not. (*People v. Taylor*, 8 Ill.App.3d 727, 290 N.E.2d 342.) Cases, cited by the defendant reversing convictions based on insufficient identifications, are inapposite.

In addition, the fact that fingerprints taken from the glass that defendants allegedly handled did not match defendant's fingerprints does not alter our conclusion in view of the other evidence of defendant's guilt.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.