THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MATTHEW C. SIMPSON, Defendant-Appellant.

(No. 73-419; )

Second District (2nd Division)—March 10, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant, Matthew C. Simpson, plead guilty to a charge of burglary and was sentenced to 3 years' probation. Shortly thereafter the Circuit Court of Winnebago County revoked probation following an evidentiary hearing and on August 10, 1973, sentenced defendant to 2 to 6 years in prison. Defendant appeals, contending that the trial court committed reversible eror in considering improper evidence at the sentencing hearing and that the People failed to prove by a preponderance of the evidence the charge of burglary alleged in the petition to revoke probation.

Defendant was originally charged with burglary of a school in Rockford, Illinois. The public defender was appointed to represent him. Subsequently, defendant waived indictment and plead not guilty after an information was filed. Defendant later changed his plea to guilty, and on April 25, 1973, was sentenced to 3 years' probation.

On May 10, 1973, a petition to vacate probation was filed charging that defendant, on May 6, 1973, had burglarized the residence of James D. Boyd, 1118 South Winnebago St., Rockford, Illinois. A private attorney represented defendant at the hearing.

James Boyd, the owner of the burglarized home testified first at the hearing to revoke probation. He had been gone from home with his fam-

ily, returning about 2:30 P.M. May 6, 1973. The kitchen door was open, and the glass broken out. He noticed records missing from the living room and that the bedroom had been ransacked, with cigarettes and "stuff" taken therefrom. Seven records, nine or ten packs of cigarettes, a stopwatch, some checkbooks, a portable tape player belonging to another person who lived in the house, an Afro pick, a bottle of shampoo, and a brown gangster-style hat were missing. Boyd identified these items taken by police from the three involved as his possessions.

Matthew Davis testified that he, Gary Hunter, and the defendant went to a party at a house on Island Avenue on May 5, 1973. They left the party at 12:30 A.M., and while walking home defendant said he was going to see if James Boyd was home so that they could get a ride home from Boyd. Davis didn't know what time they arrived at the Boyd house, but when they did defendant said Boyd was not at home and asked if they wanted to break in. Davis and Hunter indicated they did not. Simpson then went up to the side door, took something, perhaps a shoe, broke the glass, opened the door, and all three entered. Once inside defendant broke some doors open and they went into the living room. They searched the house. Davis took a stopwatch and some records. Hunter took cigarettes and a hat. Defendant took some records, some cigarettes, and a tape player. Davis could not positively identify the exhibit shown him as that tape player. After 15-20 minutes in the house, they left. The group split at Jefferson Street, and defendant went to the house of a friend. Davis was promised that his burglary charge would be reduced to a misdemeanor in return for his testimony. Davis admitted giving a statement to police after they showed him a statement given by Hunter. He also admitted that he and Hunter discussed their statements while in jail.

Gerald Bost, a police officer, testified to the arrest of Davis and Hunter and the recovery of property taken from the Boyd home. Gary Lindbeck, a police officer, testified that he went to defendant's home in response to a phone call from defendant's mother to pick up eight records and a stereo tape player.

Gary Hunter testified that he, Davis and defendant went to a party at Ann Cole's home on Island Avenue on May 5, 1973. The three left the party at 12:30 A.M. When they passed by the Boyd home, defendant said that he wanted to get even with Boyd and that Boyd had gone to Chicago for the weekend. Simpson knocked on the front door, then they went to a side door where defendant slid the window up and opened the door. They went in and defendant broke an inner door glass with a wrench. They then ran out of the house, came back, and re-entered on the first floor. Defendant took records and a tape player. Hunter indi-

cated that the police wanted defendant badly and that in return, "if I tell the truth," the police would go easy on him. Hunter also testified that the State's attorney told him that if he told the truth his burglary charge would be reduced to petty theft and he would get a year's probation. Hunter spoke to Davis after the arrest of Davis and said that things would be easier for them if they would "tell the truth" and implicate defendant after the police mentioned defendant.

Defendant testified that he, Davis, and Hunter went to Ann Cole's house on Island Avenue at 9:45 P.M. on May 5, 1973. Ann and another girl arrived about a half-hour later. Defendant said that he left the Cole home alone about 11 P.M. Hunter and Davis had left 20-25 minutes earlier and defendant did not see them later that night. Defendant got home about 11:30 P.M. His parents, younger sister, and god-brother [sic] were there. On May 7, 1973, a friend named Taylor told defendant that the police were looking for him. Defendant called the police department that day and spoke to Detective Bost, who came over to defendant's house and took him to the police station. Defendant said that Boyd was a family friend, that he had no quarrels with Boyd and that he was not at Boyd's residence at all on the night in question. After getting home he played cards with his mother and company and did not leave the house that night. He first learned of the burglary on the night of May 6, 1973, when Boyd told him over the telephone that if defendant did not return the stolen property by Wednesday, Boyd would shoot him.

Matthew Simpson, defendant's father, corroborated defendant's testimony as to his coming home and staying there. Delores Simpson, defendant's mother, also corroborated this part of his testimony. She also said that James Boyd came to the house about 2:30 A.M. On May 8, 1973 she called the police and told them that she found a bag in front of the door to her house, and that she did not know who left it there or what it contained. On cross-examination she said that she looked into the bag and saw two records and a tape (player?). (Officer Lindbeck had stated there were eight records and a tape player in the bag.)

Ann Cole testified that on May 5, 1973, defendant, Davis, and Hunter had arrived at her house around 8:30-9:00 P.M. Hunter and Davis left about an hour later. Defendant left alone at 10:30-11 P.M. She said that she and a cousin were already home when defendant, Davis, and Hunter arrived.

The issues on appeal are:
 I. Did the trial court commit reversible error in considering improper evidence at the sentencing hearing?
 II. Did the People fail to prove by a preponderance of the evi-

dence the charge of burglary set forth in the petition to revoke probation?

## I.

Before defendant was resentenced after revocation of his probation, the court had to consider the presentence report submitted by the probation officer. (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—6—4(h) and 1005—4—1(a)(2).) The presentence report is to include "the defendant's history of delinquency or criminality." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—2(a)(1).) The presentence report here was prepared for the prior burglary charge in which defendant was placed on probation. At the sentencing hearing after the revocation of probation defendant's attorney indicated that there was no need for an additional presentence report and that this prior report would be sufficient.

The probation officer's presentence report indicated the defendant had been confined at a boy's farm school for 1 year on a charge of theft and that defendant had admitted the burglary of an A.D.C. office to the probation officer. The report also included F.B.I. and juvenile rap sheets indicating previous involvement of defendant, already adjudicated delinquent, in burglary and theft as a juvenile, for which he was placed on probation, and a 5 day jail term for petty theft plus several other arrests. The probation officer also indicated that defendant had not been completely honest with him throughout their interview.

According to the Council Commentary to section 5—3—2(a)(1) of the Code of Corrections, the guidelines set forth for the presentence report are based on the American Bar Association's Minimum Standards Relating to Probation, section 2.3 (Ill. Ann. Stat. ch. 38, par. 1005—3—2 (a)(1), Council Commentary (Smith-Hurd 1973)). That particular A.B.A. standard includes as part of a presentence report "a full description of any prior criminal record of the offender." The Commentary to the Standards goes on to explain what is meant by "prior criminal record." "* * * Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction." American Bar Associations' Minimum Standards Relating to Probation, section 2.3 (Approved Draft, 1970).

However, one must look deeper at the Council Commentary to section

5—3—2(a)(1) of the Unified Code of Corrections, *supra*. After stating that the section was modeled after the A.B.A. Standards, the council goes on to say, "It is intended as a *guideline* [emphasis added] of materials ordinarily vital in the proper determination of sentence selection." (Ill. Ann. Stat., ch. 38, par. 1005—3—2(a)(1), Council Commentary (Smith-Hurd 1973.) The comments do not say that the relevant A.B.A. standards were adopted outright, but that they are "models" or "guidelines." Also, the specific wording of the statute is "defendant's history of delinquency or criminality." Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—2 (a)(1).

The report included F.B.I. and juvenile rap sheets showing that defendant had spent 5 days in jail on a petty-theft conviction, had been placed at a boy's farm school for theft and was subsequently twice placed on probation for delinquent acts. The Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 702—9(2)) provides that only adjudication of delinquency may be considered by the court after a subsequent conviction in passing upon application for probation and in determining the sentence to be imposed.

As was stated in *People v. Blake*, 15 Ill.App.3d 39, 43-44:

"The question then arises whether or not the court improperly considered the arrest record of the defendant or whether he properly considered only the apparent two delinquencies, one seemingly resulting in probation to the probation officers, and the other in his commitment to the Boy's Farm School at Durand. The courts of Illinois have repeatedly said that in a situation such as this it will be presumed that the court only considered proper evidence of prior offenses in imposing the sentence in a case before it." (See also *People v. Kelley*, 44 Ill.2d 315; *People v. Fuca*, 43 Ill.2d 182, *People v. Adkins*, 41 Ill.2d 297; *People v. Schleyhahn*, 4 Ill.App.3d 591, 281 N.E.2d 409.)

It is noteworthy that in *Blake* (at 44), "the probation report in question was submitted to the court without objection at the time probation was granted on the original charge. The probation officer recommended and, notwithstanding the inclusion of the above juvenile incidents, the court granted probation. It can scarcely be said that those incidents were considered by the court as the basis for determining the sentence after the commission of a subsequent burglary and revocation of probation." Here too, the report was submitted without objection and defendant was admitted to probation. While the subsequent burglary here was not admitted as in *Blake*, there were additional established adjudications of delinquency and a conviction of theft here for the court to base sentencing on.

■■ Also, in the present case we have an admission by the defendant, included in the probation officer's presentence report, that he had broken into an A.D.C. office. "[T]he introduction of evidence of criminal conduct of which there is no conviction is proper at a presentence hearing when knowledge of such conduct is given by defendant's admissions and when there is a failure upon defendant's part to deny the allegations contained in the evidence introduced." (*Fuca, supra,* at 186.) *Fuca,* too, involved a probation officer telling the court of admissions of criminal conduct made by the defendant.

There is no indication that the court here considered improper evidence at the sentencing hearing.

## II.

■ A violation of a condition of probation must be established by the preponderance of the evidence. (*People v. Crowell,* 53 Ill.2d 447.) Probation revocation is normally within the discretion of the trial court and will not be disturbed absent an abuse of discretion. (*People v. Sims,* 32 Ill.2d 591; *People v. Dotson,* 111 Ill.App.2d 306.) A fair reading of the testimony set forth above finds the testimony of defendant's two accomplices consistent in relevant part. Though it appears that the police encouraged them to testify against the defendant, the record clearly indicates that in return for leniency they testified to the truth. There is no indication in the record that they made up a story to implicate defendant. Their statements were taken before the State's attorney indicated that their charges would be reduced. Also, the record indicated that what each of the three took according to the testimony of the two accomplices, was found by the police at their respective houses.

■■ Granted, defendant, defendant's parents, and his friend Ann Cole, testified consistently with each other as to an alibi for defendant. However, the court was not bound to believe the alibi. (*People v. Taylor,* 8 Ill.App.3d 727.) As the court said in *Taylor:*

> "It is not the function of this court to make a determination of the credibility to be attached to the testimony of various witnesses; that is the responsibility of the trier of fact whose findings will be reversed only when the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt." (8 Ill.App.3d 727, 731.)

It is the province of the trier of fact to judge the innocence or guilt of an accused and its verdict will not be set aside on appeal unless "palpably contrary to the weight of the evidence or so unsatisfactory as to justify a reasonable doubt of guilt." (*People v. Hairston,* 46 Ill.2d 348, 366. See also, *Taylor, supra.*) The court here arrived at a rational conclusion on the evidence before it, particularly in view of the fact that

guilt here had only to be established by the preponderance of the evidence.

For the foregoing reasons the judgment of the Circuit Court of Winnebago County is affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.