THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SYLVESTER DAVIS, JR., Defendant-Appellant.

Fifth District   No. 75-138

Opinion filed April 28, 1976.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant was indicted for the robbery of Anne Warfield on April 11, 1974. He was tried before a jury and found guilty of this offense. Thereafter he was sentenced to a term of imprisonment of 2 to 6 years. From the judgment of conviction and sentence, he brings this appeal.

On the night of April 11, 1974, Anne Warfield was doing some laundry in a laundromat in Collinsville, Illinois. Besides Mrs. Warfield, Patrick Tognarelli (the teenage son of the proprietor), and his friend, Patrick Cox, were also present. A young man, who was identified as defendant by Mrs. Warfield, Tognarelli, and Cox at trial, walked into the laundromat. He went to the rear of the laundromat, stopped briefly to speak to Tognarelli and Cox, and then walked over to Mrs. Warfield. He grabbed Mrs. Warfield around the waist and began pulling on the neckline of her dress. As Mrs. Warfield resisted he tried to pull her dress over her head and shoved her against a table and some washing machines. Mrs. Warfield shouted for Tognarelli and Cox to help her. Cox ran out of the laundromat to get Patrick Tognarelli's father, who was present in his apartment nearby. Tognarelli shouted that he would call the police and proceeded to do so. At that point defendant reached for Mrs. Warfield's purse. As he grabbed the purse, she grabbed the strap of the purse. Defendant pulled on the purse, trying to break Mrs. Warfield's grip, and in the process pulled her out the door of the laundromat and down to the ground. The strap broke and defendant ran away with the purse. Mrs. Warfield sustained cuts and bruises on her head, hand, hip, and back during the struggle. Her dress was torn and muddy and had blood on it from one or more of the cuts.

On August 15, 1974, defendant was arrested because of the incident described above. The following morning he was taken into court for a preliminary hearing. The court informed defendant that he was charged with robbery and attempted rape. Defendant, who was not represented by counsel, made an inculpatory statement during the hearing, which was the subject of a later suppression hearing and which is the subject of the first issue raised in this appeal. On September 12, 1974, the grand jury indicted defendant for robbery but, apparently, did not indict defendant for attempted rape. At any rate, defendant was brought to trial for robbery only.

Defendant's first contention in this appeal is that the trial court erred in admitting the inculpatory statement made by defendant during the preliminary hearing. On August 15, 1974, defendant was arrested on the charges of attempted rape and robbery. At the time of the arrest a police officer advised defendant of his "*Miranda* rights." The next morning defendant was brought into court for a preliminary hearing pursuant to section 109—1 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1975,

ch. 38, par. 109—1.) (Although no transcript was made at this hearing, what transpired during the hearing was described by several witnesses, including the judge who had presided and defendant, at a later suppression hearing and at trial.) The judge presiding at the preliminary hearing read the robbery complaint and explained the elements of the offense and possible dispositions for a conviction of that offense. The judge then proceeded to read the complaint charging attempted rape. Defendant, apparently surprised that he was charged with the latter offense, interrupted the judge's reading of the complaint by asking "how he was supposed to rape somebody in the laundromat." As the judge was explaining the elements of the offense of attempted rape and the possible dispositions for a conviction of such offense, defendant blurted out a statement to the effect that "I admit I took her purse, but I didn't attempt to rape anybody." The judge then admonished defendant that he "ought to keep his mouth shut," finished his explanation of the offense, and advised defendant of his rights. A hearing was later held on the motion to suppress this statement; however, the motion was denied, and the statement was thereafter used at trial.

The cases upon which defendant relies with respect to this issue are *People v. Jackson*, 23 Ill. 2d 263, 178 N.E.2d 310, and *People v. Rue*, 35 Ill. 2d 234, 220 N.E.2d 457. In *Jackson* the Supreme Court held:

"[W]here an accused is unattended by counsel *and does not become a witness of his own volition*, a judicial confession made at a preliminary hearing may not be properly introduced into evidence at the subsequent trial, unless the proof affirmatively shows (1) that the accused had independent knowledge or was advised by the court of his right to refuse to testify; (2) that he was advised or knew that any statements made could be used against him, and (3) that he knowingly and intelligently waived his constitutional privilege against self-incrimination." (Emphasis added.) (23 Ill. 2d 263, 268, 178 N.E.2d 310, 313.)

The court reiterated this statement in *Rue* and applied it to find that an inculpatory statement made by the defendant at the preliminary hearing in that case had been improperly admitted at trial.

That *Jackson* and *Rue* are inapplicable to the instant case is apparent from a number of considerations. First of all, as the emphasized portion of the above quotation clearly indicates, the holdings in *Jackson* and *Rue* do not apply when a defendant makes an inculpatory statement or a confession of his own volition. In both *Jackson* and *Rue* the defendants, being without counsel at the preliminary hearing, were questioned by the State's Attorney, and it was that questioning which elicited the inculpatory information. The court in *Jackson* distinguished the situation in the case before it from the situation in *People v. Farrell*, 349 Ill. 129, 181

N.E. 703, and in *Powers v. United States*, 223 U.S. 303, 56 L. Ed. 448, 32 S. Ct. 281, in which the defendants had been voluntarily sworn and gave testimony in their own behalf. In contrast to the situations in *Jackson* and *Rue*, in the instant case, the defendant was not called to testify nor was he asked any questions by the State's Attorney or the court. His statement was voluntarily and spontaneously made at a time when it was unanticipated that he would make any inculpatory remark.

■■   As former Chief Justice Warren pointed out, the privilege against self-incrimination is fulfilled "when the person is guaranteed the right 'to remain silent *unless he chooses to speak in the unfettered exercise of his own will.' Malloy v. Hogan*, 378 U.S. 1, 8, 12 L. Ed. 2d 653, 659, 84 S. Ct. 1489 (1964)." (Emphasis added.) (*Miranda v. State of Arizona*, 384 U.S. 436, 460, 16 L. Ed. 2d 694, 715, 86 S. Ct. 1602, 1620.) Of course *Miranda* was concerned with custodial interrogation, that is, with "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) The ruling in *Miranda* was specifically aimed at confrontations between the police and the accused. Nevertheless, most of the discussion in *Miranda* is applicable to the claim of defendant in this case that his privilege against self-incrimination was violated. For example, in *Miranda* the former Chief Justice pointed out that although there is probably a greater need for protection of the accused's fifth amendment privilege while in the setting of a police station than there is in a court, nevertheless, a spontaneous statement made in the police station by the accused may be used against him at trial.

> "As a practical matter, the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery. * * * In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. * * * There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. *Volunteered statements of any kind are not barred by the Fifth Amendment* and their admissibility is not affected by our holding today." (Emphasis added.) 384 U.S. 436, 461, 478, 16 L. Ed. 2d 694, 716, 726, 86 S. Ct. 1602, at 1621, 1630.)

And as Mr. Justice White pointed out in his dissenting opinion in *Miranda*,

it is not every statement which is protected by the fifth amendment, but only those which are "compelled."

> "That amendment deals with compelling the accused himself. It is his free will that is involved. Confessions and incriminating admissions, as such, are not forbidden evidence; only those which are compelled are banned." 384 U.S. 436, 536, 16 L. Ed. 2d 694, 759, 86 S. Ct. 1602, 1660.

Full consideration of this matter requires further comment, however. For, as pointed out in the opinion of the court written by Mr. Justice Fortas in *In re Gault*, 387 U.S. 1, 55, 18 L. Ed. 2d 527, 561, 87 S. Ct. 1428, 1458, we must be sure that an inculpatory statement, such as we are dealing with here, was not only uncoerced, but also that it was not the product of ignorance of rights.

> "If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair."

As pointed out by Mr. Justice White's concurring opinion in *Gault*, in which he expanded on his earlier statement in *Miranda*, in some cases the accused may feel he must make a statement simply because an authority, such as a judge, has questioned him.

> "The Fifth Amendment protects a person from being 'compelled' in any criminal proceeding to be a witness against himself. Compulsion is essential to a violation. It may be that when a judge, armed with the authority he has or which people think he has, asks questions of a party or a witness in an adjudicatory hearing, that person, especially if a minor, would feel compelled to answer, absent a warning to the contrary or similar information from some other source." 387 U.S. 1, 64, 16 L. Ed. 2d 527, 566-67, 87 S. Ct. 1428, 1463.

The question in *Gault* involved the use of certain admissions elicited from a juvenile through questions asked by the juvenile court judge. The juvenile had not been admonished that he could remain silent and did not have counsel present. The United States Supreme Court concluded that the privilege against self-incrimination applies in juvenile proceedings and that the privilege had been violated.

■■ We have already concluded that *Jackson* and *Rue* are inapplicable to the instant case; so also do we conclude that *Gault* is inapplicable. The inculpatory statement made by the defendant in the instant case was neither the result of questioning by the trial judge nor was it the "product of ignorance of rights." For a statement to have been the *product* of ignorance of rights, it must appear not only that the person was ignorant

of his rights, but also that had he not been ignorant he would not have spoken. The obvious example of this is where the defendant not knowing he can refuse to answer, responds to questions put to him by the judge or the State's Attorney, which he would not have answered if he had been informed. (See *People v. Jackson; People v. Rue.*) In the instant case, however, ignorance of rights was not even a factor behind the statement made by defendant. He was not questioned or called on to speak in any way. It cannot be said that even full knowledge of the right to remain silent would have prevented the type of statement made here, that is, a statement which was blurted out and which interrupted the court's explanation of the offense and the potential disposition for a conviction thereof.

■■ Defendant next contends that prejudicial error occurred when the State's Attorney commented during closing argument about the failure of defendant to call certain individuals to testify in his behalf. (Apparently the individuals referred to were surnamed "Piggies," and they lived in the same part of Collinsville as did defendant in April of 1974 and occasionally played basketball with defendant.)

The portion of the State's Attorney's closing argument to which defendant refers was the following:

"Why didn't the defendant have the Piggies in Collinsville testify? You heard the testimony of various witnesses concerning the Piggies. They lived behind the laundromat in the project area. Why didn't they testify for the defendant?"

Defense counsel objected to this remark; however, the objection was overruled.

Defendant cites *People v. Thomas*, 22 Ill. App. 3d 854, 318 N.E.2d 342, for the principle that it is improper and prejudicial for the prosecution to make a closing argument which comments upon a criminal defendant's failure to call witnesses in his own behalf. Defendant then states that an exception exists where the potential witnesses are available to the accused but not to the State (citing *People v. Munday*, 280 Ill. 32, 117 N.E. 286) and that when potential alibi witnesses are injected into the case by the defendant, such witnesses are considered unavailable to the State (citing *People v. Mays*, 3 Ill. App. 3d 512, 277 N.E.2d 547).

Defendant asserts that there was no showing that the Piggies would not have been available as witnesses for the State. Defendant further asserts that the potential use of the Piggies as witnesses for the defense was first brought out during the direct testimony of Patrick Cox, a witness for the State. Our review of the record shows the latter assertion to be very much in error. The first mention of the Piggies at the trial occurred during the cross-examination of Patrick Tognarelli by defense counsel, as can be seen in the following colloquy:

"[Defense Counsel]: Do you know Piggies?

[Tognarelli]: Yes.

[Defense Counsel]: Si [*sic*] Piggies about five feet eight inches tall?

[Tognarelli]: Which one are you talking about?

[Defense Counsel]: Which one am I talking about? How many Piggies are there?

[Tognarelli]: What do you mean? They got little ones and it goes on up.

[Defense Counsel]: Is one about sixteen or seventeen? Or seventeen or eighteen?

[Tognarelli]: There is one my age, one is a Junior and one is a Sophomore.

[Defense Counsel]: Do you know their names?

[Tognarelli]: One's Harry and one's Durrant."

The second mention of the Piggies, and the one to which defendant refers, occurred during the following colloquy:

"[State's Attorney]: How did you know his [defendant's] name?

[Cox]: He played basketball in the Projects down at Piggies where all the guys played.

[State's Attorney]: Who is Piggies?

[Cox]: That is his last name."

Patrick Cox was the fourth witness to testify at trial; Patrick Tognarelli was the second witness. It is thus readily apparent that it was defense counsel who first made mention of the Piggies at trial.

Moreover, contained in the record is a notice of alibi defense which was sent to the State's Attorney, and filed in the trial court a week before the trial. This notice contains a list of eight witnesses whom defendant intended to call in order to establish his alibi defense. Among the witnesses listed is Jesse Piggies. It can hardly be more apparent that it was defendant who first injected the potential use of the Piggies as alibi witnesses into the case.

Be that as it may, whether the Piggies were first injected into the case by defendant or by the State seems of little importance. For it is unclear what significance to the case the testimony of the Piggies might have had. None of the witnesses at trial indicated that the Piggies might have had information relevant to defendant's alibi defense. Defendant's alibi defense was that he had gone to Mississippi on March 1, 1974, and had not returned to the Collinsville area until June 28, 1974. Several witnesses, including defendant, his mother, his grandmother, his aunt, his cousin, and a neighbor, testified in support of this alibi. Moreover, defendant on re-cross-examination stated that he did not know where the Piggies lived on the date of the instant offense, since he was not in the Collinsville area on that date.

In light of these considerations, even if we would agree with defendant, *arguendo*, that the State's Attorney's comments concerning the absence of the Piggies was improper, nevertheless, we would conclude that the comment was of such a minor nature that it could not have been a material factor in defendant's conviction and would not require reversal. It is well settled that improper remarks do not constitute reversible error unless they result in substantial prejudice to the accused. *People v. Berry*, 18 Ill. 2d 453, 165 N.E.2d 257, *cert. denied*, 364 U.S. 846, 5 L. Ed. 2d 69, 81 S. Ct. 87; *People v. Nilsson*, 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied*, 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.

■■ Defendant next contends that the court erred in imposing sentence in that it considered a number of arrests which had not resulted in convictions. Defendant's reference is to nine separate "police contacts" listed in the presentence report, which had either been "station adjusted" or which otherwise resulted in no charge being filed. The State points out that defendant offered no objection to these items appearing in the presentence report. We note that a failure to offer such objection was given some significance in *People v. Blake*, 15 Ill. App. 3d 39, 303 N.E.2d 419, *aff'd*, 59 Ill. 2d 220, 319 N.E.2d 745, *cert. denied*, 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999; *People v. Simpson*, 26 Ill. App. 3d 205, 324 N.E.2d 635; and *People v. Grau*, 29 Ill. App. 3d 327, 330 N.E.2d 530. Moreover, in *People v. Emmett*, 34 Ill. App. 3d 167, 340 N.E.2d 235, the court specifically held that a defendant who fails to object in the trial court to the form or depth of a presentence report waives consideration of that point on review of the case. However, it is not necessary that we determine here whether the lack of such objection should have controlling significance on this issue. For there is a separate ground upon which the inclusion of the arrest record can be held proper. Here defendant specifically requested probation. When a defendant requests probation, it is proper for the sentencing court to consider all matters in the record, including prior arrests which have not resulted in convictions. *People v. Taylor*, 13 Ill. App. 3d 974, 301 N.E.2d 319; *People v. Young*, 30 Ill. App. 3d 176, 332 N.E.2d 173; *People v. Hagans*, 30 Ill. App. 3d 964, 333 N.E.2d 642 (abstract opinion); also see *People v. Grau; People v. Pope*, 31 Ill. App. 3d 990, 334 N.E.2d 366; and *People v. Pavone*, 31 Ill. App. 3d 1013, 335 N.E.2d 45.

Defendant's final contention is that the sentence of two to six years was excessive. Initially, we note that the instant offense involved the direction of a considerable amount of violence toward the victim. During the course of her encounter with defendant, the victim had to struggle against his attempts to pull down the neckline of her dress and to pull her dress over her head. She was thrown against a table and some washing machines and eventually was pulled to the ground outside the

laundromat. As a result of the struggle, the victim sustained cuts and bruises to her hand, head, hip, and back. We also note that the same judge presided at both the trial and the sentence hearing. He was thus able to observe the demeanor of defendant and to assess his credibility. Such factors are relevant to sentencing and can more properly be considered by the trial court than by the reviewing court. (*People v. Bolyard*, 61 Ill. 2d 583, 338 N.E.2d 168.) Our review of the record shows a proper exercise of discretion by the court in imposing sentence; we should not, therefore, disturb that sentence in this appeal. *People v. Taylor*, 33 Ill. 2d 417, 211 N.E.2d 673.

The judgment of the trial court is affirmed.

Affirmed.

KARNS, P. J., and EBERSPACHER, J., concur.