THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY JONES, (Impleaded), Defendant-Appellant.

(No. 56866; ▮▮▮▮▮▮▮)

First District (1st Division)—April 9, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Suzanne M. Kohut and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Larry Jones, was found guilty of murder in a bench trial and sentenced to a term of 15 to 30 years. He contends that the evidence failed to prove beyond a reasonable doubt that he was accountable for the criminal act of his co-defendant.

Jerome Robinson, fifteen years old at the time of trial, testified that he and Nathaniel Nelson were walking south on the 6400 block of South Greenwood about 5:30 P.M., December 30, 1970, when Ulysses Murphy approached them on the same side of the street. Murphy stopped in a gangway and talked to Joe Thomas, Keith Williams, and the defendant. Murphy went across the street and stopped a cab. Robinson heard someone, whom he could not identify, say, "Let's get this cab." Williams came out of the gangway and fired a rifle once at the cab; the cab kept going, and Williams fired two more shots. Joe Thomas and the defendant were in the gangway at the time the shots were fired. Williams, Murphy, Thomas, and the defendant ran through the gangway after the shots were fired.

Nathaniel Nelson testified that Ulysses Murphy said, "Let's get this cab," and Williams fired the shots.

Patrick McNally, an Assistant State's Attorney, testified that he took a statement in the presence of a shorthand reporter from the defendant, whose mother was also present, on January 4, 1971. The defendant was apprised of his right to remain silent, to consult with a lawyer, to have a lawyer present during the questioning, and that anything said could and would be used against him in court. The statement, which was unsigned, was received in evidence. In that statement, the defendant, who was sixteen at the time, said that he had gone to Keith Williams' house and later went to a show with Williams, Thomas, and Murphy. Afterward, all four went to a candy-grocery store across the street from his home. When they were ready to leave, Keith said, "Let's go rip them off," which, the defendant explained, "Means go rob." He and the other two agreed and went in front of the defendant's house. Williams, who lived in the same building, went inside and returned with an automatic shotgun. The defendant did not know if Williams had shells in the shotgun. All four went through a gangway. When asked who talked about robbing a cab, the defendant said, "Keith. We were walking through the gangway and I said what are you going to get, and he said let's get a cab, and everybody went along." When asked how everybody agreed, he said, "Nobody disagreed." Murphy flagged a cab, the cab started slowing down, and they walked toward it, Williams with the shotgun; the cab sped away and Williams fired once; the defendant ran home. He had previously

seen the cab leave a lady passenger off. He had seen Williams fire the shotgun before at street lights and dogs.

The cab driver, Ernest Bradley, was dead when the police arrived a few minutes after the shooting. The cause of death was a gunshot wound of the heart.

The defendant testified that when Murphy said, "Let's get a cab," he said nothing except to tell Williams and Murphy to "count him out." Joe Thomas also told Murphy to "count him out." The defendant then started walking back to the gangway away from the street. After he had taken about five or six steps, he heard the shot and started running. On cross-examination, he said that he originally intended to share in any money they got in a robbery, but not after he decided he wanted to be counted out. He did not tell the police or the Assistant State's Attorney that he had decided to pull out of the robbery. He did not walk toward the cab and did not see a lady passenger alight from the cab before the shooting.

The Criminal Code provides:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. \* \* \*." Ill. Rev. Stat. 1969, ch. 38, sec. 5—2.

To summarize the defendant's position, he maintains that there is no proof that he agreed to aid in the commission of the offense, other than mentally; and the evidence shows that he withdrew from the plan, if he ever participated in it. He relies on the following cases: *People v. Shields*, 6 Ill.2d 200, 127 N.E.2d 440; *People v. Ramirez*, 93 Ill.App.2d 404, 236 N.E.2d 284; *People v. Barnes*, 311 Ill. 559, 143 N.E. 445; *Jones v. People*, 166 Ill. 264, 46 N.E. 723.

In *Shields*, the two defendants walked past a man seated on a park bench; one of the defendants asked the man what he was looking at and then struck him several times and kicked him, injuring him severely. The other defendant simply stood there and later said; "Come on; leave him alone; he has had enough; let's get out of here." The Supreme Court affirmed the conviction of the defendant who struck the man and reversed the conviction of the other, holding that since there was no evidence implicating him in the assault and no affirmative act of assisting, abetting, or encouraging the assault his mere presence was insufficient to sustain a conviction. In *Ramirez*, the defendant went to an apartment where a man was tied up. He was asked by one Bradford to help take

the bound man out, and he refused. He was then asked to come along for a drive. Bradford carried the bound man out of the apartment and put him in a car. The defendant rode in the car and was dropped off at a tavern. Bradford picked him up later, but the bound man was not in the car. The bound man's body was later found in a quarry. The court reversed the murder conviction for a number of reasons: there was no proof that the bound man was alive while in the car; there was no proof that the defendant aided or abetted; and there was no proof that the defendant shared the criminal intent of the principal or that there was a *community of unlawful purpose.* In *Barnes,* the defendant and her five-year-old child were passengers in a stolen car. She had asked the driver where he had picked up the car and was told that it was none of her business. The court held in reversing that her presence was not enough, and there was no evidence of aiding and abetting. In *Jones,* the father of the defendant shot and killed his son-in-law while the defendant was present. The court, in holding that there was no evidence of aiding and abetting, pointed out that the defendant warned the deceased of the danger and attempted to prevent him from going into the barn where he knew his father was, armed with a gun. None of the cases cited by the defendant is factually apposite.

■■ More in point are those cases dealing with "the long established common-design rule, *i.e.,* that where defendants have a common design to do an unlawful act, then whatever act any one of them does in furtherance of the common design is the act of all and all are equally guilty of whatever crime is committed." *People v. Armstrong,* 41 Ill.2d 390, 398, 243 N.E.2d 825. See also *People v. Rybka,* 16 Ill.2d 394, 158 N.E.2d 17.

■■ By his own testimony, as well as his statement, the defendant has established a common design to commit robbery. He argues that, since he did not expressly agree, the proof fails to establish more than a negative acquiescence. But proof of a common purpose need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by the group. (*People v. Richardson,* 32 Ill.2d 472, 476, 207 N.E.2d 478.) Proof that a person was present at the commission of a crime without disapproving or opposing it may be considered with other circumstances. *People v. Hill,* 39 Ill.2d 125, 135, 233 N.E.2d 367.

The facts of this case are similar to those in *People v. Johnson,* 35 Ill.2d 624, 221 N.E.2d 662. The defendant was fourteen years of age, and the evidence consisted mainly of his own statements. He joined a group of boys, and they agreed to go out and get some money. As they were walking down the street, one of the group said: "There is a man, a

Puerto Rican—I'm going to get some money." That boy crossed the street and the defendant followed him; the other boy struck the man; at that point other members of the group crossed the street and joined in beating the victim, who died as a result of the beating. The defendant did not strike the victim. The court pointed out, in upholding the conviction for murder, that "the defendant did not detach himself from the group but * * * was one of the first to cross the street toward the victim."

■■ The defendant in this case agreed, if not in words, to participate in a robbery and to share in the proceeds. He went with the others to the scene and watched Murphy try to hail the cab. He walked toward the cab with Williams knowing he was armed with a shotgun and left only after the shot was fired. Under these facts the trial court could properly find that the defendant "assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the same." *People v. Hill,* 39 Ill.2d 125, 135, 233 N.E.2d 367.

■■ The defendant argues further that, assuming sufficient proof of his participation in the original plan to rob, the evidence shows that he had withdrawn from the plan. The general rule is that "one who withdraws from a criminal enterprise is not responsible for the acts of another subsequently committed in furtherance of the enterprise, provided the fact of withdrawal is communicated to the other conspirators." (14 Am.Jur., Criminal Law, sec. 80; see also 22 Corpus Juris Secundum, Criminal Law, sec. 94.) As was pointed out in *People v. Rybka,* 16 Ill.2d 394, 406, 158 N.E.2d 17:

> "However, it is the communication of intent to withdraw and not the naked fact of withdrawal that determines whether one who advised, encouraged or incited another to commit a crime is to be released from liability as an accessory before the fact."

■■ The only proof of withdrawal is contained in the defendant's testimony which, if believed, could support such a finding. If, on the other hand, his statement is believed, the factfinder could conclude that he had not withdrawn. The accuracy and truth of the statement was a fact question, like the credibility of the defendant, to be determined by the trial judge. (*People v. Nicholls,* 42 Ill.2d 91, 96, 245 N.E.2d 771; *People v. Hiller,* 7 Ill.2d 465, 469, 131 N.E.2d 25.) The trial court in his summation clearly addressed himself to this issue:

> "The question is whether or not * * * he withdrew, and he indicates by his testimony that he told Keith 'Count me out.' That, of course, is impeached by the fact that he gave a statement in which he talked freely and that portion of his later testimony does not appear in the statement, and he indicated quite candidly

he didn't say anything about counting himself out at that time, and that only thought about it two days after he was arrested and when he was in the Juvenile Home.

The statement, the Court believes, is true and correct, that he didn't leave until after the first shot which, of course, was, if he was withdrawing far too late."

We see no reason to gainsay the trial court's determination of fact. The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.