The People of the State of Illinois, Plaintiff-Appellee, *v.* Floyd Perry, Defendant-Appellant.

(No. 59263; ▮▮▮▮▮▮▮▮

First District (4th Division)—June 26, 1974.

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan and John M. Kalnins, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant-appellant was indicted for armed robbery and in a bench trial he was found guilty of the lesser included offense of robbery. The defendant was sentenced to serve a term of 2 to 6 years in the Illinois State Penitentiary. The sole contention of the defendant in this appeal is that he was not proven guilty beyond a reasonable doubt. We do not agree.

The complaining witness, Benjamin Simmons, testified that on July 3, 1971, at approximately 12:30 A.M., he and his fiancee, Tina Harris, were accosted by two men carrying sawed-off shot guns. Simmons stated that when the men came up behind him and Miss Harris, he was in the vestibule of his apartment building and in the process of unlocking the second door. The vestibule was lighted and one of the men stood behind Miss Harris while the other positioned himself in front of Simmons. Simmons stated that the man in front of him was no more than a foot away and that he did observe the man's face. He described the man as wearing brown bell-bottom trousers and brown shoes. Simmons stated that the individual in front of him was short and dark skinned and that the other man was tall, light and had kind of sandy hair. Simmons testified that the man in front of him was approximately 5 feet 9 inches tall and that he told Simmons, "This is a stick up, give it up." Simmons stated he was then told to go outside and that he and his assailant then stood between Simmons' apartment building and an adjacent building. According to Simmons, the vestibule light was showing through and he was able to observe the man. Simmons stated that at this time the man was approximately 3 feet away from him and that he was still pointing the shotgun at him. As Simmons was being confronted by one of the men, the other individual was holding a shotgun on Miss Harris and Simmons stated they were about 2 feet away. Simmons testified the entire incident took between 10 and 12 minutes and that $200, some change, a Timex watch and several other articles were taken from him. During his testimony Simmons identified the defendant as the individual who had confronted him and robbed him on July 3, 1971.

Simmons also testified that he saw the defendant again on the following day in front of Harold's Chicken Shack on 47th Street. Simmons stated that he was with a friend and that he observed the defendant get out of a 1962 blue Pontiac. Simmons directed his friend to call the police and Simmons took down the license number of the automobile. When the police arrived, Simmons told them the car had pulled away and he gave them a description of the vehicle and its license number. Simmons followed the police as they searched for the vehicle. The police subsequently

found the subject vehicle and Simmons stated there were three or four people in the automobile. He stated he pointed out the defendant as the individual who had robbed him. Simmons testified that at the time he identified the defendant for the police, the defendant had on the same brown bell-bottom pants and brown shoes as on the previous night.

Simmons also testified that about a month after a hearing had been held at 26th and California, he saw the defendant again and had a conversation with him. Simmons stated the defendant told him he was not the man who robbed him and offered Simmons $200 to drop the case. About a week later, Simmons stated that he saw the defendant again and that the defendant said to Simmons, "You know, I'm not the man that held you up." Simmons also stated that Tina was afraid of what would happen to her and that Tina's mother had sent her to California.

At one point during cross-examination Simmons stated that he was 6 feet tall and that the individual who had been standing in front of him was about 4 inches shorter than himself. At another point Simmons stated the man in front of him was about 5½ feet tall. He also stated that he thought he had told the police that the shorter of the two men weighed approximately 165 pounds. During cross-examination Simmons testified that at no time had he told the police that the man who robbed him had a prominent enlargement of the forehead. The defendant's attorney asked Simmons to look at the defendant and he asked Simmons, who was approximately 25 feet away from the defendant, if he noticed anything concerning the defendant's forehead. Simmons responded that it appeared that the defendant had a knot in the center of his forehead. The defendant moved within arms length of Simmons and Simmons stated that what appeared to have been a knot on the defendant's forehead was a scar. Simmons was also asked if there was a scar over the defendant's right eye and he responded affirmatively. He stated he did not remember observing any scars on the defendant's forehead at the time of the robbery.

Simmons was also asked during cross-examination if he observed sideburns on the defendant and he answered "yes." He was then asked it the man who robbed him on July 3, 1971, had sideburns and he stated that he could not remember. Simmons also stated that part of the money that had been taken from him belonged to the company where he was then employed. He stated he reported the loss to the company and that they fired him because of negligence. It was also brought out during cross-examination that Simmons had not previously discussed with the State's Attorney the $200 that he said the defendant offered him to drop the case. However, Simmons did state that he thought he told Officer Phillip

Dore of the Chicago Police Department about the $200 offer from the defendant.

The next witness called on behalf of the State was Officer Phillip Dore of the Chicago Police Department. Officer Dore stated that on July 3, 1971, at approximately 8 or 8:15 P.M., he received a call to proceed to 47th and Greenwood. When Officer Dore arrived at that location, he spoke with Benjamin Simmons who informed Officer Dore that he had seen two individuals who had robbed him that morning. Officer Dore stated that Simmons described the vehicle the individuals were in as a 1961 bluish-green Pontiac. After receiving the description, Officer Dore gave a flash message over his radio and then proceeded to tour the area. Officer Dore stated that Simmons followed as he and his partner toured the area. At 4500 South Greenwood, the police observed the subject vehicle and Officer Dore stated that at this time he placed the defendant under arrest. The defendant, according to Officer Dore, was standing in a group of approximately 15 black individuals. Officer Dore testified that the defendant was wearing brown pants, brown shoes and a black shirt and that this was the description of the clothing that Simmons had given him.

During cross-examination Officer Dore stated that at the time of the arrest the defendant's weight was in the area of 190 pounds. He also stated that Simmons had told him two of the men who had robbed him were in the vehicle. However, Officer Dore stated that he did not observe a tall, young, light-complected Negro with reddish hair. Officerr Dore stated that Simmons did not describe a tall, light-complected Negro and that he only described the defendant. However, Dore also stated that he did not give Simmons any time to go into detail about the other individual. Officer Dore testified that the defendant did not have any weapons in his possession at the time of his arrest nor did he have $200 or a Timex watch in his possession.

The defendant called three alibi witnesses to testify on his behalf. Two of the witnesses stated that they were at the defendant's home from 8 P.M. on July 2, 1971, until 8 A.M. on July 3, 1971. They testified that they were playing cards and drinking in the defendant's home and that the defendant was present and did not leave their presence during the entire evening. The other witness stated he arrived at the defendant's home sometime before midnight on July 2, 1971, and that he remained there until 8 A.M. on July 3. This witness also stated the defendant did not leave his home at any time during the evening.

The defendant testified in this own behalf and stated that he was at his home on the evening of July 2, 1971, with his friends. He stated that they remained there until 8 A.M. the following morning and that he did

not leave his home during this period of time. The defendant denied knowing any tall, young, light-complected Negro and stated that he was not in the company of such person in the early morning of July 3, 1971. The defendant also denied owning a sawed-off shotgun. He testified that he had a scar on his forehead since 1965 and that on July 2, and 3 of 1971 he had a growth of hair under his chin and over his upper lip. The defendant also stated that his weight at the time of the robbery was approximately 200 pounds and that he was 5 feet 9½ inches tall. He denied committing the offense and of offering Mr. Simmons $200 to drop the charges. The defendant also stated that neither a sawed-off shotgun nor any of Mrs. Simmons' possessions were ever found in his home.

At the conclusion of all the evidence the trial court found the defendant guilty of robbery. The court in rendering its finding expressed the opinion that while the complainant might be mistaken as to the defendant's identity, he was not mistaken as to the bribe that had been offered to him by the defendant. The trial court stated that this was corroborative evidence of guilt and the evidence that tipped the scale against the defendant. As stated previously, the defendant was sentenced to serve a term of from 2 to 6 years.

■■ The defendant's basic contention is that the complainant's testimony was weak and vague and therefore, insufficient to support his conviction. This contention is premised on the fact that the complainant did not describe any of his assailant's facial characteristics. The defendant specifically refers to Mr. Simmons' failure to describe the scar on the defendant's forehead, the sideburns, and the growth of hair under his chin and over his upper lip that the defendant testified he had on July 3, 1971. While it is true that the complainant did not mention these physical characteristics of the defendant to the police, the failure to remember physical characteristics does not render an identification unworthy of belief. When an identification is positive, precise accuracy in description is not necessary. (*People v. Jackson*, 95 Ill.App.2d 28, 237 N.E.2d 858 (1968); *People v. Camp*, 9 Ill.App.3d 445, 292 N.E.2d 242 (1972).) Mr. Simmons was positive and unequivocal in his identification of the defendant on the evening after the robbery and again in court. As stated by our supreme court in *People v. Miller*, 30 Ill.2d 110, 113, 195 N.E.2d 694, 697 (1964):

> "We have often held that the testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People v. Solomon*, 24 Ill.2d 586; *People v. Pride*, 16 Ill.2d 82; *People v. Renallo*, 410 Ill. 372.)"

It has also been held that:

"In Illinois it is established that where an identification is positive, precise accuracy in describing facial characteristics is unnecessary. Further, the failure of a witness to notice the presence or absence of a mustache, or of other facial features, has been held to be a minor discrepancy. The failure to report the mustache to the police in the case at bar did not destroy the credibility of the witness, but was solely a question of the weight to be afforded her identification. See *People v. Catlett*, 48 Ill.2d 56, 268 N.E.2d 378; *People v. Mitchell*, 2 Ill.App.3d 1081, 278 N.E.2d 169." (*People v. Camp, supra*, at 446.)

In the instant controversy the complainant was positive in his identification of the defendant and his failure to notice or mention the defendant's physical characteristics only went to the weight to be afforded the identification. The trial court specifically found the complainant to be completely credible and this determination was not so unreasonable as to raise a reasonable doubt of the defendant's guilt.

■■ There was testimony in the case at bar that the defendant offered a bribe to the complainant in order to have him drop the charges. The defendant contends that this evidence was inherently improbable because there was no documentation that the complainant ever reported the two encounters with the defendant to any law enforcement officials. Defendant also maintains that this evidence by itself would not be sufficient to establish his guilt beyond a reasonable doubt. The law regarding a bribery attempt is that such evidence allows an inference of guilty knowledge to be made. (*People v. Gambony*, 402 Ill. 74, 83 N.E.2d 321 (1948); *accord, People v. Young*, 82 Ill.App.2d 461, 226 N.E.2d 417 (1967).) It should be noted that the complainant did testify that he thought he had told Officer Dore of the $200 offer from the defendant. The trial court in finding the defendant guilty did not rely solely on the evidence of the bribery attempt. According to the trial court, it was this evidence that tipped the scale against the defendant. The trial court was entirely correct in making an inference of guilty knowledge from this evidence together with the other testimony of the complainant was sufficient to convict the defendant.

■■ The defendant also contends that he presented an unimpeached and uncontradicted alibi defense. As previously stated, there were three witnesses who did testify that they were at the defendant's home on the date in question and that the defendant was in their presence and did not leave. However, a trial court is under no duty to accept and believe an alibi witness. As stated in *People v. Setzke*, 22 Ill.2d 582, 586, 177 N.E.2d 168, 170 (1961):

"There is no obligation on a trial court to believe alibi testimony

over positive identification of the accused, even though the alibi testimony may be given by a greater number of witnesses. *People v. Lamphear,* 6 Ill.2d 346; *People v. Wheeler,* 5 Ill.2d 474." We are of the opinion that the defendant was convicted beyond a reasonable doubt and therefore, the decision of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN and JOHNSON, JJ., concur.