THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLARENCE SULLIVAN, Defendant-Appellant.

First District (2nd Division)   No. 61375

Opinion filed April 26, 1977.

Paul M. Brayman, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Kevin Sweeney, and Renee Golbus Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Clarence Sullivan, was charged by indictment with the offenses of murder, attempt murder, and two counts of attempt armed robbery in connection with the holdup of a grocery store and assaults upon two of its employees. (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4, 9—1, 18—2.) Upon a bench trial defendant was found to be guilty of all charges. Judgment was entered on the findings and defendant was sentenced to serve concurrent terms of confinement in the Illinois State

Penitentiary of 30 to 100 years for the offense of murder; 5 to 20 years for the offense of attempt murder; and 5 to 20 years for each count of attempt armed robbery.

From entry of the judgment of conviction defendant appeals contending: (1) that the evidence properly adduced at trial was insufficient to establish his guilt beyond a reasonable doubt; (2) that the State failed to establish by competent evidence the *corpus delicti* of the offense of murder; (3) that the trial court erred in admitting into evidence certain hearsay testimony characterized as a spontaneous declaration; and (4) that defendant was prejudiced by the State's failure to comply with certain pretrial discovery orders.

A review of the evidence adduced at trial reveals that at approximately 7:15 a.m. on March 24, 1973, Carl Conway arrived at his place of employment, the A&P Supermarket located at 360 East 55th Street in Chicago, Illinois. Conway parked his automobile and walked across the street to a restaurant where he purchased a cup of coffee and a sandwich. He returned to the store between 7:20 and 7:25 a.m. and, finding the entrance to be locked from within, knocked on the door in order to summon assistance. Four or five minutes later, another employee, Meredith Owens, emerged from the interior of the store to admit Conway.

According to Conway, as he and Owens walked into the store, Owens disclosed that the establishment was in the process of being robbed by two men, one of whom had stationed himself at the store's rear door while his accomplice waited inside for the store's bookkeeper to arrive with the necessary keys.

Conway testified that he observed the latter individual standing at a nearby check-out counter and pointing a sawed-off shotgun toward the door. A small pistol of unknown calibre was carried in the waistband of the gunman's trousers. Standing 5 to 6 feet from the assailant and aided by illumination provided by the store's electrical lighting, Conway observed that the gunman was a black male, wearing a brown pullover cap, an orange and brown "body shirt," dark trousers and a soiled brown trenchcoat. Conway indicated that the man had no facial hair or mustache. Defendant, Clarence Sullivan, was subsequently identified by Conway as the man he observed on this occasion.

Approximately two minutes after they had entered the store, defendant ordered Owens and Conway to lie on the floor near the check-out counter. Conway requested and was granted defendant's permission to drink his coffee. Conway testified that during this interlude he observed defendant "every chance I could get." Approximately two minutes later, defendant ordered the men to arise and demanded to be taken to the store's freezer. Conway led defendant to a withholding cooler at the rear

of the store, approximately 70 feet from the check-out counter, and illuminated by electrical lighting. Defendant left Owens and Conway alone in the cooler for a period of approximately two minutes. Upon his return, defendant ordered the pair to again lie on the floor with their hands positioned behind their backs. Conway protested that the floor was covered with water but acquiesced when defendant commanded, "Lay down, I am not bullshitting with you m_____ f_____, lay down."

Having thus subdued the two employees, defendant absented himself from the cooler for an additional period of approximately two minutes and, upon returning, positioned himself directly behind Owens' feet as the latter lay prostrate and face down on the floor. Defendant then twice discharged his shotgun into the body of Meredith Owens.

Thereafter, having heard defendant "click" his gun, Conway attempted to rise from the floor but was also struck by two blasts from defendant's shotgun. Defendant fled and Conway crawled to a meat counter where he collapsed. Conway estimated that the entire incident required 15 to 25 minutes. Melvin Guilford, another employee, arrived at approximately 7:45 a.m., discovered Owens and Conway, and summoned medical assistance.

Two days after the shooting and while undergoing intensive medical care, Conway was briefly questioned by investigating Chicago Police Department Officers Kennedy and Savage. Savage testified that on this occasion Conway described his assailant as a black male, approximately 28 years of age, wearing a dark knit skullcap, a pullover sweater and a grey cloth overcoat with epaulets on the sleeves. According to Savage, Conway also informed him that the gunman displayed several day's growth of hair above his upper lip. Savage further indicated that Conway reported that the gunman was armed with a .25-caliber pistol which he attempted to use against Conway but the sidearm had misfired. Conway also told Savage that he had unsuccessfully attempted to pursue the escaping felon arming himself with a meat-cutting knife.

On two subsequent occasions, while confined to the hospital, Conway was shown a number of police photographs. Defendant's photograph was not among any of the groupings and Conway did not identify any of these photographs as portraying his assailant. Upon his release from the hospital, Conway visited police facilities on three separate occasions and on each successive date viewed 3 to 5 "mug books" containing 70 to 100 photographs. On his third such visit Conway discovered defendant's photograph and identified him as the assailant. Conway subsequently viewed a lineup at police detention facilities and also identified defendant by this means. In court, Conway stated, with respect to defendant, "I'll know him anywhere."

Police investigation of the scene of the crime led to the recovery of

three shotgun shell casings. Officer Savage identified several photographs, taken at the scene and subsequently adduced into evidence, as portraying Meredith Owens as the officer observed him on the date of the murder. These photographs depict a large shotgun wound in the left lower back and several shotgun pellet wounds in Owens' upper left shoulder and neck. Dr. Edward Shalgos, an expert forensic pathologist, testified that he performed a post-mortem examination on the body of a man identified as Meredith Owens. Dr. Shalgos indicated that he observed two abnormal presentations on the body, both of shotgun discharge lesion character. One was found in the low back of the left side positioned broadly between the lowest aspect of the lowest rib and the highest aspect of the pelvic bone. The second involved the upper aspect of the left shoulder and neck. The cause of death was related to these wounds by reason of a laceration of the brain and a portion of the spinal cord produced thereby. Geraldine Owens, the deceased's sister, testified that she had occasion to observe her brother's body at the morgue on March 24, 1973 and that the aforementioned photographs accurately depicted her brother's condition as she observed it on that date.

On June 20, 1973, defendant was questioned by Chicago Police Investigator Thomas Minton and several members of the Office of the Cook County State's Attorney. Minton testified that on this date defendant indicated that he did not remember his whereabouts on March 24, 1973; that he had no knowledge of an armed robbery attempted on that date; that he had not frequented the store in question during 1973; and that prior to 1973 defendant had lived at an address located one-half block from the store. These statements were memorialized by the Assistant State's Attorneys in the form of an intraoffice memorandum.

On July 10, 1973, defendant testified at a coroner's inquest. On that occasion, according to Officer Savage, defendant stated that he had no knowledge of the occurrence of March 24, 1973, and further indicated that he had been at a relative's home on that date.

At trial, defendant did not testify in his own behalf or offer evidence in support of an alibi.

Defendant initially contends that the evidence properly adduced at trial was insufficient to establish his guilt beyond a reasonable doubt. Specifically, defendant asserts that the testimony of Carl Conway, which served to identify defendant as the perpetrator of the offenses charged in the indictment, was vague, uncertain and unworthy of belief.

■■ It is settled beyond peradventure that where the identification of an accused is at issue, the testimony of even one witness is sufficient to convict, provided that witness is credible and that he viewed the accused under circumstances which would permit a positive identification. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) Where the trier

of fact renders a decision based upon credible and substantial evidence which is sufficient to convict, the verdict may not be set aside merely because of minor inconsistencies which the trier of fact properly chose to resolve in favor of the State. *People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453; *People v. Wright* (1972), 3 Ill. App. 3d 829, 279 N.E.2d 398.

■■ In the instant case, Conway experienced ample opportunity to observe his assailant at close quarters, within varying contexts, under adequate lighting conditions and for extended periods of time. We have examined the record and find, in accord with the trial court, that Conway's testimony was generally clear and convincing and that his identification of defendant as the perpetrator of the assaults was positive and unwavering. The evidence presented by the State is not improbable, unconvincing or contrary to human experience. The State's case, in view of all the evidence, has few inconsistencies and none sufficient to raise a reasonable doubt as to defendant's guilt. See *People v. Perry* (1974), 21 Ill. App. 3d 18, 315 N.E.2d 173.

Defendant next contends that the State failed to establish by competent evidence the *corpus delicti* of the offense of murder. Specifically, defendant claims that the evidence failed to establish that the body examined by the coroner's pathologist was that of Meredith Owens.

The elements to be proved in cases of criminal homicide are proof of death and proof of criminal agency causing death. (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546.) Proof of death and the identity of the deceased may be established by circumstantial evidence. *People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208.

■■ In the instant case, Conway testified that he and Owens were lying face down on the floor of the cooler at the time Owens was mortally wounded. The assailant had positioned himself directly behind Owens' feet when the shotgun discharged into Owens' body. Photographs taken of the deceased at the scene of the crime were introduced into evidence and were included in the record on appeal. These photographs depict a large shotgun wound in the victim's lower back and several other pellet wounds in his upper left shoulder and neck. The coroner's pathologist testified that he performed an autopsy upon a body identified to him as Meredith Owens. The wounds which the pathologist observed on this occasion matched those observed on the body of Meredith Owens at the scene of the crime. Moreover, Geraldine Owens, the victim's sister, viewed his remains at the morgue on the day of the shooting and subsequently identified the aforementioned photograph as accurately portraying her brother's physical condition on that date. Such circumstantial evidence positively established Owens' death by criminal agency and the fact that the body examined by Dr. Shalgos was, indeed,

that of Meredith Owens. Hence, the State established the *corpus delicti* of the offense of murder beyond all reasonable doubt.

■■ Defendant also maintains that his conviction for the offense of attempt armed robbery must be reversed because the only evidence regarding defendant's intent to rob the supermarket was provided by testimony characterized as inadmissible hearsay, specifically, Owens' disclosure to Conway on the morning of March 24, 1973, that the establishment was in the process of being robbed by two individuals one of whom, subsequently identified as defendant, was then within the store. The trial court properly characterized Conway's testimony regarding this disclosure as hearsay. However, this testimony was admitted into evidence, over defense objection, as a spontaneous declaration and, hence, within the exception to the hearsay rule.

This exception was examined by the Illinois Supreme Court in *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25, wherein it is noted:

> " 'A spontaneous declaration may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him.' " 28 Ill. 2d 464, 471, 193 N.E.2d 25, 29.

Thus, three factors have been deemed necessary in order to bring a statement within the spontaneous declaration exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous statement; (2) an absence of time to fabricate; and (3) a relation of the statement to the circumstances of the occurrence. *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.

■■ In the instant case there can be no question but that Owens' statement was prompted by the presence of an armed gunman on the premises in the process of committing a robbery. It appears that at the time of Owens' utterances he was within range of, and continually threatened by, the assailant's weapon which was pointed directly at the

door through which Owens and Conway had passed. While Owens' statement did not refer directly to the presence of the weapon, the utterances serve to explain the gunman's presence in the store and the existence of the weapon was established by independent means. The declaration in question was made sufficiently near the time of the confrontation to insure its trustworthiness and to negate any likelihood of fabrication. *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.

■■ The trial court properly admitted the testimony in question into evidence and this evidence, in conjunction with defendant's otherwise unexplained presence in the store while armed with a sawed-off shotgun, constitutes a sufficient evidentiary basis upon which the trier of fact could infer defendant's intent to commit the offense of armed robbery. His apparent failure to complete the robbery is without consequence. See *In re Armour* (1973), 15 Ill. App. 3d 529, 305 N.E.2d 47, *aff'd*, 59 Ill. 2d 102, 319 N.E.2d 496.

Defendant finally contends that the failure of the State to comply with certain pretrial discovery orders operated to defendant's substantial prejudice and mandates reversal of his convictions.

The record indicates that defendant was questioned by Chicago Police Department Investigator Minton and several Assistant State's Attorneys on June 20, 1973. Minton was permitted to testify, over defense objection, regarding the substance of that conversation. Minton had not made note of this conversation in his police report. The prosecution memorialized the conversation in the form of an intraoffice memorandum which contained an account of defendant's statements. Despite written pretrial requests for oral statements of defendant, defense counsel was not furnished a copy of the memorandum or a summarization of defendant's statement. Counsel claimed that he was unaware of the existence of the statement until it was disclosed through Minton's testimony at trial.

■■ The failure of the State to comply with the pretrial discovery orders requiring disclosure of the aforementioned statement to defense counsel was in patent violation of the mandates of Illinois Supreme Court Rule 412(a)(ii), irrespective of the apparent good faith of the prosecution. (Ill. Rev. Stat. 1973, ch. 110A, par. 412(a)(ii); *People v. Dixon* (1974), 19 Ill. App. 3d 683, 312 N.E.2d 390; *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) The State concedes that it failed to disclose the statement but contends that this inadvertence does not mandate reversal of defendant's conviction since the statement was without bearing on the material issues before the court and the exclusion of Minton's testimony regarding the statement would not have altered the outcome of the trial which resulted in defendant's conviction.

The statement in question, as summarized in the intraoffice memorandum withheld from defendant, indicates only that defendant

denied all knowledge of the occurrences of March 24, 1973; that defendant, as of the date of the statement, was unable to recall his whereabouts on the date of the occurrences; and, that defendant was generally familiar with the vicinity of the crime.

Defendant has not alleged any basis, and our own review of the record fails to suggest, that the statement in issue was obtained in contravention of defendant's constitutional rights. Hence, that defendant was denied the opportunity of testing the statement's admissibility by means of a pretrial motion to suppress the statement as evidence is without consequence. Nor can it be said that defendant was denied the opportunity to utilize the memorandum to impeach Officer Minton's recollection of the circumstances and content of defendant's statement. The trial court ordered production of the document during the course of trial proceedings and defendant was aware of its existence prior to his cross-examination of Officer Minton. The memorandum appears to be entirely consistent with Minton's testimony regarding the substance of defendant's statement. These matters may also have been effectively examined by compelling the author of the memorandum to testify, however, defendant did not choose to do so and cannot now be heard to complain in this regard.

Nor can defendant complain of unfair prejudice occasioned by the introduction into evidence of testimony characterized as directly impeaching a contemplated but unfulfilled alibi defense. Defendant did not testify at trial nor were any witnesses produced to substantiate an alibi defense. Within the latter context, the statements withheld from defendant amount to no more than a denial of guilt. Nothing in the text of these statements in any way serves to incriminate defendant or cast doubt upon defendant's potential to present a credible alibi defense. The trial court expressly noted that, in his estimation, the statement was without "any great significance."

■■ Considered within the context of the entire case, neither the State's failure to provide defendant with a summarization of the statement in timely fashion, nor the admission into evidence of Minton's testimony regarding the statement, operated to defendant's prejudice so as to mandate reversal of defendant's conviction. See *People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398; *People v. Jones* (1977), 66 Ill. 2d 152, 361 N.E.2d 1104.

For the aforementioned reasons the judgment of the circuit court is affirmed.

Affirmed.

DOWNING, P. J., and PERLIN, J., concur.