THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WALTER LEE HANDLEY (Impleaded), Defendant-Appellant.

First District (1st Division)   No. 61906

Opinion filed July 18, 1977.

Arthur H. Grant, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Timothy Quinn, and Mary C. Shropshire, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Walter Lee Handley and Antoine Turner were charged by indictment with attempt rape in violation of section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—4). After a joint bench trial, defendants were found guilty and sentenced to the Illinois State Penitentiary for two to six years. Defendant Handley appeals, contending that (1) he was not proved guilty beyond a reasonable doubt, (2) he was improperly denied a counsel of his own choice, (3) he was denied effective assistance of counsel at his sentencing hearing, and (4) the trial court improperly considered evidence of arrests not resulting in convictions in sentencing him, and (5) the trial court's sentence is improper because it did not consider defendant's potential for rehabilitation.

The prosecutrix testified that at about 11 p.m. on October 5, 1973, she met a friend named Maurice while walking home from a party. Maurice

went into a store at 115th Street and Bishop, Chicago, Illinois. She waited for Maurice, but decided to walk toward home by herself. While walking toward Halsted Street she met the defendant, who said "Hi" to her. She returned the greeting. She had seen the defendant before and heard people call him Fat Walter. The prosecutrix continued walking and was met by some of defendant's friends.

One of defendant's friends asked her name and she told it to him. She did not continue talking to him. When she started walking again, she tripped and fell. One of the boys said that they were going to take her home because she was high. The prosecutrix told the boy to leave her alone because she did not know him. The boys insisted that they did not want anything to happen to her and said they would walk her to her door. They began pulling prosecutrix toward 114th Street. She was pulled and pushed around the corner into a lot in back of an abandoned house. Although she was screaming and fighting, the five or six boys took her into a garage. Prosecutrix identified the defendant and his co-defendant as two of the boys who had taken her to that garage.

They pushed her to the floor of the garage. They removed her shoes, her pants and pulled down her underwear. One of the boys left the garage, saying he would wait outside. The others started climbing over her. She was still struggling. Turner put his foot on her throat and told her he could choke her to death. The one who was on top of her complained to his friends that she kept pushing him off. The others said he was taking too long. They wanted their turn. Defendant told her to shut up because she was making too much noise. After that, the police came.

She first saw the police after she came out of the garage. One of the boys was caught by the police as he tried to get over the fence. She could not see which one of them was caught going over the fence. Later that night, she identified defendant and Turner at the police station.

On October 5, 1973, prosecutrix was 15 years old and was not married to defendant or Turner.

On cross-examination, prosecutrix stated that she could not describe the boy on top of her because it was dark in the garage and she was trying to resist him. Two boys had seen her being pulled by the group of boys, but they left when one of the attackers said he was prosecutrix's cousin. Defendant had entered the garage ahead of her and the other boys. She had not been drinking or smoking at the party that night.

During redirect examination, she testified that while she was being pulled, one of the boys asked where they were going. Defendant responded, saying they were going to this lot up here.

On re-cross-examination, the prosecutrix testified that defendant had walked to the front of the rest of the group.

Officer James Gorman of the Chicago Police Department testified that

he was on duty as a tactical officer on October 5, 1973. He was working with Officer Koerber. They received a call that a woman was calling for help. Upon arriving on 114th Place, they heard screams from the back of 1456 West 114th Place, an abandoned brick bungalow. Koerber went into the gangway at that address. Gorman heard Koerber shout, "Halt" to a group of male negroes who were running from the garage behind the bungalow. Gorman saw a male Negro running from the alley into a yard to the west of him and arrested a man who was later identified as Turner. Gorman took Turner to a marked squad car, where he was held. When he saw the prosecutrix, she was in an emotional state and was putting her clothes back on. On that night Gorman heard no gunshots fired nor did he fire any.

Officer Leon Koerber testified that on October 5, 1973, he was a Chicago police officer assigned to work the tactical unit with Officer Gorman. They were dressed in civilian clothes and were using an unmarked automobile while on duty. At approximately 11 p.m. they received a call from police communications that a woman was screaming for help at 1456 West 114th Place. They stopped in front of an empty lot adjacent to that address. Koerber went down the gangway along the 1456 building and heard screams coming from the area of the garage. A moment after he shouted to Gorman that he had located the source of the screams, six to eight male Negroes ran from the side door of the garage.

One of the men, who later was identified as defendant, was having trouble getting over the gate of the fence by the garage. Koerber took him into custody at gunpoint. He first saw the prosecutrix as she was crawling out of the side door of the garage. She was pulling up her outer and under garments.

Antoine Turner testified in his own defense. He stated that he saw the victim in front of a liquor store on October 5, 1973. She appeared to be drunk because she was talking to everyone and pulling at them. After he left the liquor store, he walked north on Laflin Street to go to a party. While he was walking, a squad car pulled next to him and the police inside the car told him to stop. He thought they wished to speak to him about a fight he had been in earlier that night. He ran away, heard shots and fell down, thinking he had been shot. A plainclothes officer in an unmarked car arrested him. On that night he saw the prosecutrix only at the liquor store and at the police station. She left the liquor store before he did.

On cross-examination, he said he thought Officer Gorman fired at him three or four times. He had known the victim before that night.

Walter Lee Handley testified in his own defense. He left a dance at the Whistler School at about 11 p.m. on October 5, 1973. He was going to go to the liquor store at 115th Street and Laflin, but went instead to a lounge a

little further down the street. He saw the victim outside the liquor store and said "Hi" to her when he passed her. He left the lounge to go home. The victim was not outside the liquor store when he went home. He met Ossie Brise on the way home and they walked together. When he arrived home, he discovered that he could not get in the front door. While he was walking on the grass to go to the back, two officers pulled up and arrested him. The officers were not the officers who have previously testified in this trial. They wore uniforms and drove a marked car. He did not recall what he wore that night. He could not say that the prosecutrix was drunk that night.

Ossie Brise testified for the defense. He was a friend of Walter Handley. He did not see defendant from the time defendant left the lounge until he saw him in the squad car. About 30 minutes after defendant was arrested, Brise heard a single gunshot from the area of defendant's home.

Defendant argues that the evidence does not prove him guilty of attempt rape beyond a reasonable doubt. The credibility of the witnesses is determined by the judge in a bench trial and this court will not reverse unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Trock* (1977), 45 Ill. App. 3d 294, 359 N.E.2d 836.) After having carefully reviewed the record, we cannot say that a reasonable doubt of guilt is established by the record. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; see *People v. Hill* (1968), 39 Ill. 2d 125, 233 N.E.2d 367, cert. denied (1968), 392 U.S. 936; 20 L. Ed. 2d 1394, 88 S. Ct. 2305; *People v. Martin* (1977), 46 Ill. App. 3d 943, 361 N.E.2d 595; *People v. Jones* (1973), 11 Ill. App. 3d 450, 297 N.E.2d 178.

Defendant contends that his right to counsel was infringed because he was improperly denied counsel of his choice. On January 29, 1974, defendant filed an affidavit of indigency and the public defender was appointed to represent him. Defendant raised no objection to his representation by the public defender. On the day of trial, August 8, 1974, in defendant's presence, the public defender had the following conversation with the trial court:

"MR. O'NEAL: Before we proceed any further, this case is set for trial today and we are ready for trial. However, Mr. Handley indicates that he wants time to hire private counsel.

THE COURT: Sorry, you are too late. This case has been on, going since January, 1974, and it is ready to go to trial. Please have them execute the jury waivers in accordance with their desires.

MR. O'NEAL: For the record, Mr. Handley does have proper funds to acquire counsel. I don't think that he has asked for a continuance in this matter. It is really not that old of a case.

THE COURT: Mr. O'Neal, I am not going to continue this case. If this were the fact then Mr. Handley should have notified you and this Court well in advance of this date. All of the witnesses are present and ready to go to trial. The court is available and we are going to trial."

Defendant was silent concerning his representation by the public defender before, during and after trial. The denial of counsel of his choice was not argued in the post-trial motion.

■■ Defendant argues that the trial court's ruling denied his right to counsel and to due process of law. The right to counsel is not absolute. In *People v. MacArthur* (1971), 2 Ill. App. 3d 1077, 278 N.E.2d 530, when the first witness was called the defendant said he wanted to get a lawyer. After reminding defendant that he had a lawyer, the trial court asked defendant why defendant wanted a delay. MacArthur merely replied that he was not ready. The appellate court stated:

"* * * A defendant with court-appointed counsel who, on the day a case is set for trial, requests a continuance so he can obtain a lawyer of his choice, must do more than say he is not ready. He must, promptly and with some clarity, give a reason why he wants another lawyer. He must make an ascertainable showing that he, or someone for him, will be able to obtain other counsel. (Compare *People v. Green*, 42 Ill. 2d 555, 248 N.E.2d 116 and *People v. Payne, supra.*) Defendant did not meet these requirements. Therefore, we conclude that refusal to grant defendant's request for a continuance neither deprived him of the constitutional right to counsel nor due process of law. *People v. Tyson* (Ill.App.2d), 264 N.E.2d 403; *People v. Leman*, 95 Ill.App.2d 212, 238 N.E.2d 213." (2 Ill. App. 3d 1077, 1080.)

In this case, defendant gave no reason for wanting another lawyer. No showing was made that defendant or someone else was able to obtain counsel for him. His right to counsel and to due process were not infringed. See *People v. Wallace* (1976), 44 Ill. App. 3d 89, 357 N.E.2d 858; *People v. Williams* (1976), 39 Ill. App. 3d 449, 350 N.E.2d 135; *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.

■■ Defendant also contends that because of incompetence he was denied the effective assistance of counsel at his sentencing. The asserted incompetence consisted of counsel's failure to object to incompetent matter being included in the co-defendant's presentence investigation report. Even if objection should have been made to the included matter, the record fails to show actual incompetence by defendant's appointed counsel during the trial and sentencing which resulted in substantial prejudice and without which the outcome would probably have been

different. *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416; *People v. Dudley* (1970), 46 Ill. 2d 305, 263 N.E.2d 1, *cert. denied* (1971), 402 U.S. 910, 28 L. Ed. 2d 651, 91 S. Ct. 1386.

■■ Defendant also argues that he was denied the assistance of counsel because there was a conflict between the defendants' interests at trial and during sentencing. The defendants both testified at trial and their testimony did not conflict. At sentencing, nothing in the record indicates any conflict between the defendants. In the absence of prejudice or conflict in joint representation, there is no denial of effective assistance of counsel. (*People v. Somerville* (1969), 42 Ill. 2d 1, 245 N.E.2d 461; *People v. Vinson* (1977), 49 Ill. App. 3d 602, 364 N.E.2d 364; *People v. Normant* (1975), 25 Ill. App. 3d 536, 323 N.E.2d 553.) This court "ought not disturb a judgment on the basis of the conjectural or speculative conflicts between the interests of co-defendants which are envisioned for the first time on appeal." *People v. McCasle* (1966), 35 Ill. 2d 552, 556, 221 N.E.2d 227.

■■ Defendant argues that the trial court improperly considered arrests without convictions in determining defendant's sentence. No objection was made at the time of sentencing to the inclusion of the arrests in the presentence report. Such errors are deemed waived. (*People v. Cook* (1975), 31 Ill. App. 3d 363, 334 N.E.2d 834.) In any event, the trial court's mere knowledge of these arrests is not reversible error. (*People v. Wilson* (1973), 11 Ill. App. 3d 693, 297 N.E.2d 277.) Absent actual prejudice to defendant, the trial court will be presumed to have considered only proper evidence in sentencing defendant. (*People v. Kelley* (1970), 44 Ill. 2d 315, 255 N.E.2d 390, *cert. denied* (1971), 403 U.S. 906, 29 L. Ed. 2d 683, 91 S. Ct. 2212; *People v. Simpson* (1975), 26 Ill. App. 3d 205, 324 N.E.2d 635.) There is nothing in this record which rebuts that presumption.

■■ Defendant also asserts that the trial court did not take into account his potential of rehabilitation in sentencing him. A review of the record on sentencing shows that defendant's contention is wholly without merit. Probation may be denied although defendant has no prior record. (*People v. Metts* (1975), 30 Ill. App. 3d 868, 334 N.E.2d 277.) Defendant herein has already served jail time on a theft conviction. Absent an abuse of discretion, we will not interfere with a sentence. (*People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) This record indicates no abuse of the trial court's discretion. Defendant's conviction and sentence are affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.